[No. B105238. Second Dist., Div. Six. June 26, 1997.]

ALMAR LIMITED, Plaintiff and Respondent, v.
COUNTY OF VENTURA et al., Defendants and Appellants.

**COUNSEL**

James L. McBride, County Counsel, and Robert R. Orellana, Assistant County Counsel, for Defendants and Appellants.

Nordman, Cormany, Hair & Compton, William H. Hair and Glenn J. Dickinson for Plaintiff and Respondent.

**OPINION**

**YEGAN, J.**—Over 75 years ago Justice Holmes said: "A word is not a crystal, transparent and unchanged; it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." (*Towne* v. *Eisner* (1918) 245 U.S. 418, 425 [38 S.Ct. 158, 159, 62 L.Ed. 372]; see also e.g., *Pearson* v. *State Social Welfare Board*

(1960) 54 Cal.2d 184, 195 [5 Cal.Rptr.2d 553, 353 P.2d 33].) This appeal turns on the meaning of a single word, "location." The skin of this living thought may vary greatly. For example, it may expand to cover an entire country, or contract to cover a single boat slip.

Business and Professions Code section 12240 allows a county, by ordinance, to charge a fee for the inspection and testing of electric utility meters.[1] The fee cannot exceed the county's actual inspection costs and is subject to a statutory cap based on the number of meters installed at each "location." (§ 12240, subd. (f).) But what is a location? Section 12240 does not define the term and we are once again called upon to ascertain legislative intent.

The County of Ventura (County) contends that each boat slip in a 455-slip marina is a separate "location" subject to a $3.80 registration fee, while the marina operator, Almar Limited (Marina), contends that its entire marina constitutes a single "location" that is subject to a maximum cap fee of $200. The trial court agreed with Marina and granted its motion for summary judgment. As we shall explain, this ruling frustrates rather than promotes legislative intent and we must reverse.

<em>The Statute</em>

Section 12240 provides, in pertinent part: "(a) Except as otherwise provided in this section, the board of supervisors may, by ordinance, charge an annual device registration fee, not to exceed the county's total cost of actually inspecting or testing the devices as required by law, to recover the costs of inspecting or testing weighing and measuring devices required of the county sealer pursuant to Section 12210, and to recover the cost of carrying out Section 12211. [¶] (b) Except as otherwise provided in this section, the device registration fee shall not exceed the amount prescribed in the Table of Maximum Annual Charges set forth in subdivision (f). [¶] . . . [¶] (f) Table of Maximum Annual Charges:

| Number of Devices: | Charge Per Location: |
| --- | --- |
| 1 to 3 | $40 |
| 4 to 9 | $80 |
| 10 to 19 | $120 |
| 20 to 25 | $160 |
| Over 25 | $200 |

[¶] (g) For mobilehome parks, recreational vehicle parks, and apartment complexes, where the owner of the park or complex owns and is responsible

---

[1]All statutory references are to the Business and Professions Code unless otherwise stated.

for the utility meters, the annual fee shall not exceed sixty dollars ($60) per park or complex, and a fee of up to two dollars ($2) per device per space or apartment. . . ."

### The County Ordinance

The Ventura County Board of Supervisors implemented section 12240, subdivision (a), by enacting ordinance No. 4080 (the ordinance), which authorizes County to charge an annual device registration fee for, among other things, electric utility meters. The ordinance amended sections 6296-2 and 6296-6 of the Ventura County Ordinance Code to define certain terms and provide formulae for determining County's actual inspection and testing costs. It defines the term "location" as: "the room enclosure, building, space or area where one or more weighing or measuring instruments are located or operated." (Ventura County Ord. Code, § 6296-2, subd. (d).) The ordinance thus attempts a definition but, unfortunately, it does not resolve this appeal.

### The Dispute, Proceedings, and Trial Court Ruling

Marina operates 455 slips at the Channel Islands Harbor. Each slip has at least one electric utility meter. Relying on the definition of "location" included in the ordinance, the County informed Marina that, for the year 1995, Marina would be charged a registration fee of $3.80 per slip, for a total fee of $1,729. Contending that the County's interpretation of the ordinance is inconsistent with the $200 fee cap imposed under section 12240, subdivision (f), Marina filed this action for declaratory relief to determine the validity of the ordinance and the registration fee assessed by the County.

The trial court granted Marina's motion for summary judgment ruling that the ordinance's definition of "location" was inconsistent with the maximum fee allowed under section 12240, subdivision (f). The trial court reasoned that the exclusion of marinas from subdivision (g) evidenced a legislative intent to treat marinas and mobilehome parks differently. "In the court's view, the Legislature intended to place an absolute limit of $200 per business location on the fee collected from the business owner, regardless of the number of measuring devices located at the business location. The County's interpretation of 'location' is, in the court's view, inconsistent with Section 12240, and the legislative intent behind it."[2]

---

[2]At oral argument, Marina claimed that its "business location" approach would apply to a single marina with several thousand boat slips extending several miles. The inspector who walks this hypothetical marina to inspect the interspersed meters would be hard pressed to say

*Discussion*

■ The sole issue presented in this case is whether the term "location," as it is used in section 12240, subdivision (f), refers to a "business location," such as an entire marina, or whether it refers to each individual slip present at that "business location." We review this question of statutory interpretation independently. (*Estate of Madison* (1945) 26 Cal.2d 453, 456 [159 P.2d 630]; *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].)

The word "location," as used in the statute and the supplementing ordinance is ambiguous because, as the parties' briefs ably demonstrate, the word may refer to a group of discrete objects that are physically or geographically connected, such as a 12-building campus, a 3-bed ward or a 455-slip marina. It may also refer to any one of those objects, such as a building, a bed or a single boat slip. Marina relies on the Black's Law Dictionary definition of location as "[t]he designation of the boundaries of a particular piece of land . . . ." (*Id.*, (5th ed. 1979) p. 847, col. 2.) This definition is, of course, a sound one. At the same time, it merely proves Justice Holmes's point, i.e., that the definition of a word may vary greatly according to the circumstances. Given the ambiguity of the word, "location," our primary task is to determine and enforce the Legislature's intent. (*Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406]; *People* v. *Buena Vista Mines, Inc.* (1996) 48 Cal.App.4th 1030, 1034 [56 Cal.Rptr.2d 21].)

What is the purpose of section 12240? The Business and Professions Code imposes upon each county the duty to employ a county sealer to "inspect, try and test all weights, scales, beams, measures of any kind, instruments or mechanical devices for weighing or measurements, and tools, appliances and accessories connected with any or all such instruments or measures, sold, or used . . . ," for commercial or noncommercial purposes. (§ 12210, subd. (a).) Before 1982, the code authorized counties to charge a fee "to cover the cost of such service . . ." only for noncommercial weighing and measuring devices. (§ 12210, subd. (b.) Section 12240 was enacted to allow counties "to charge an annual device registration fee to recover the costs of inspecting or testing [commercial and noncommercial] weighing and measuring devices required to be tested . . . . These fees could not exceed various specifications . . . ." (Legis. Counsel's Dig., Assem. Bill No. 2987, 6 Stats. 1982 (1981-1982 Reg. Sess) Summary Dig., ch. 1380, p. 498.)

The cost-recovery aspect of the statute is mentioned several times in the Legislative Counsel's Digest and is, in fact, stated on the face of section

---

he was inspecting one location. If, however, all 455 meters were placed in a large "electrical room," Marina would have a compelling argument that the 455 meters were in 1 "location."

12240, subdivision (a). ■ This is remedial legislation. "[I]t must be liberally construed 'to effectuate its object and purpose, and to suppress the mischief at which it is directed.' [Citation.]" *Ford Dealers Assn.* v. *Department of Motor Vehicles* (1982) 32 Cal.3d 347, 356 [185 Cal.Rptr. 453, 650 P.2d 328].) ■ While the Legislature intended to limit fees charged under the statute, the motivation for the statute was to permit counties to recover the costs they incur in performing state-mandated inspections and tests. The trial court's ruling frustrates, rather than promotes, legislative intent because it prevents County from recovering its actual inspection costs.

It is undisputed that the County's actual cost for inspecting and testing each electric utility meter at the marina is $3.80 per year. Under Marina's reading of the statute, the County would be able to recover only about 12 percent of the costs it actually incurs inspecting meters at the marina. The County's interpretation of the statute should be adopted because it allows the County to recover all of those costs. ■ "A court should not adopt a statutory construction that will lead to results contrary to the Legislature's apparent purpose." (*Western Oil & Gas Assn.* v. *Monterey Bay Unified Air Pollution Control Dist.* (1989) 49 Cal.3d 408, 425 [261 Cal.Rptr. 384, 777 P.2d 157].)

■ Marina argues the County's approach is inconsistent with section 12240, subdivision (g)'s special provision for mobilehome parks and with the maxim *expressio unius est exclusio alterius*, i.e., "the expression of certain things in a statute necessarily involves exclusion of other things not expressed . . . ." (*In re Fain* (1983) 145 Cal.App.3d 540, 550 [193 Cal.Rptr. 483]. See also *Strang* v. *Cabrol* (1984) 37 Cal.3d 720, 725 [209 Cal.Rptr. 347, 691 P.2d 1013] ["Under this familiar rule of construction, an express exclusion from the operation of a statute indicates the Legislature intended no other exceptions are to be implied."].) According to Marina, the County's interpretation of section 12240 would allow it to impose fees under a formula that is similar to the one employed in subdivision (g). Since subdivision (g) does not apply to marinas, Marina argues the County's interpretation must be rejected.

Section 12240, subdivision (g) is a red herring, and we do not mean a magenta-colored fish. We mean "something that draws attention from the matter or issues at hand." (American Heritage Dict. (2d college ed. 1985) p. 1037, col. 1.) That the Legislature chose to give special attention to mobile-home parks, recreational vehicle parks and apartment complexes, means just that. This subdivision simply does not speak to marinas. Marinas are governed by subdivision (f) which requires us to give a construction to the word, "location."

The County ordinance does not treat marinas like the businesses subject to subdivision (g). The two subdivisions do not use the same fee structure. Section 12240, subdivision (g) requires mobilehome parks, recreational vehicle parks, and apartment complexes to pay a flat maximum fee of $60, plus $2 per meter. The County's fee structure does not impose a flat fee, has no maximum, and instead imposes a per-meter fee that equals the County's actual inspection and testing costs. Nor do the two formulae generate identical, or even similar revenues. For example, if subdivision (g) applied to the marina, Marina would pay a total annual fee of $970. Its current assessed fee calculated under the ordinance is $1,729.

Marina also suggests the County's interpretation should be disregarded because it would render subdivision (f) of section 12240 meaningless. If each individual "room enclosure, building, space or area . . . ," is a separate "location" for purposes of subdivision (f), Marina contends, no single location could be subject to the maximum fee allowed under subdivision (f) because no single location could have more than 25 meters. Again, we disagree. An industrial park or office building with centralized banks of electric utility meters could easily have more than 25 such meters in a single "room enclosure, building, space or area . . ." and thus be subject to the maximum $200 fee under subdivision (f).

### Conclusion

When it enacted section 12240, the Legislature intended to allow counties to assess fees to recover the costs they incur in inspecting and testing electric utility meters, subject to a schedule of maximum fees imposed by the statute. The reason for the rule is the circumstance which dictates that the term "location" as used in section 12240, embraces a single boat slip.

The judgment is reversed. Costs to appellants.

Stone (S. J.), P. J., and Gilbert, J., concurred.