[No. B231263. Second Dist., Div. Six. Nov. 19, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
NANCY LYNN CLAYBURG, Defendant and Appellant.

**COUNSEL**

Lisa M. Spillman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**YEGAN, J.**—This appeal turns on the meaning of a single word, "victim." Once again, we turn to the wisdom of Justice Oliver Wendell Holmes: " 'A word is not a crystal, transparent and unchanged; it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used.' [Citations.]" (*Almar Limited v. County of Ventura* (1997) 56 Cal.App.4th 105, 106 [65 Cal.Rptr.2d 70].) The skin of this living thought may vary greatly as defined by the Legislature in an abundance of criminal statutes. There are situations when the electorate or the Legislature will supply a definition for the subject provision or statute and there are times when no specific definition is provided. In the latter instance, must the appellate court offer a strict construction, as, for example, when the rule of "lenity" requires that a criminal defendant receive the benefit of the doubt? (See, e.g., *People v. Alberts* (1995) 32 Cal.App.4th 1424, 1427 [37 Cal.Rptr.2d 401].) Or is the appellate court to liberally construe the statute if it is "remedial"? (*Almar Limited v. County of Ventura, supra,* 56 Cal.App.4th at p. 110.) We should not resort to the "dictionary school of jurisprudence" when construing a statute. (*Unzueta v. Ocean View School Dist.* (1992) 6 Cal.App.4th 1689, 1705 [8 Cal.Rptr.2d 614] (dis. opn. of Gilbert, J.).) And we must follow the overall guideline given to us by the Legislature and construe the provisions of a statute "according to the fair import of their terms, with a view to effect its objects and to promote justice." (Pen. Code, § 4.)[1]

### Stalking Victim

■ We hold that a member of the immediate family of a stalking victim (§ 646.9, subd. (a)) who suffers emotional harm, here a child, is a "victim" for purposes of a postconviction restraining order.

Nancy Lynn Clayburg appeals from the judgment entered after her conviction by a jury of, inter alia, two counts of stalking; she was sentenced to prison for two years eight months.

The named victim of one of the stalking counts was B., appellant's former husband and the father of their daughter (daughter). At appellant's sentencing, the trial court ordered that appellant not have any contact with daughter for 10 years. However, it tempered its ruling by allowing contact if pursuant to subsequent trial court order.

The trial court issued the order pursuant to section 646.9, subdivision (k)(1), which provides: "The . . . court . . . shall consider issuing an

---

[1] All statutory references are to the Penal Code.

order restraining the defendant from any contact with the victim, that may be valid for up to 10 years, as determined by the court. [(First sentence.)] It is the intent of the Legislature that the length of any restraining order be based upon the seriousness of the facts before the court, the probability of future violations, and the safety of the victim and his or her immediate family. [(Second sentence.)]"

Appellant contends that the order was unauthorized because daughter was not a named victim of the stalking. We affirm by reading the two sentences together. We also use some common sense and ask ourselves: what is the Legislature trying to accomplish? Although the statute could have been drafted with greater precision, we believe that the Legislature intends that the courts protect a child of a named victim The second sentence, to a certainty, shows that the Legislature has a legitimate concern for the "safety" of a child of a named victim. We also observe that the actual definition of the crime of stalking speaks to the fear suffered by a member of the named victim's "immediate family." (§ 646.9, subd. (a).) Our construction of the statute "promotes justice." A contrary construction would, in our view, defeat justice.

## Facts[2]

B. was married to appellant for 14 years. They separated in April 2007. The divorce became final in December 2010 and B. was the primary custodial parent of daughter. At the time of trial, daughter was 13 years old.

Appellant owned a set of Lynx Black Cat golf clubs. In November 2007 appellant went to B.'s house, pounded a golf club on the front porch, and demanded custody of daughter. B. locked the front door and said that he would call the police if she did not leave. Daughter "saw her mom and ran to her room, crying." Thereafter appellant telephoned B. and accused him of sexually abusing daughter.

At a family law court hearing in January 2008, appellant said "that she was afraid that if she saw [B.], she would physically harm [him] and then face criminal charges." That same month, B. and daughter listened to a message appellant had left on B.'s answering machine. Appellant said: "The devil wants you. God is going to let him get you and you are going to like it because you are his [the devil's] brother." Daughter asked, "Daddy, why

---

[2] We set forth detailed facts concerning the stalking count involving B. The facts concerning the other stalking count involve a different victim but are relevant to the issues on appeal because the sentencing court could and did consider appellant's mental state in making the restraining order. The victim of the other stalking count was appellant's former supervisor at work. Appellant delivered dead and mutilated animals to her: a snake, a squirrel, and a cat.

is . . . Mommie saying the devil is going to get you?" B. told daughter to go to her room. Daughter testified that the message "made [her] scared."

On Thanksgiving Day in 2008, someone dumped a pile of potting soil on B.'s front porch. On Christmas Day in 2008, someone spread steer manure "all over [B.'s] porch and driveway." A gift from appellant to daughter was hanging on the doorknob of the front door. Appellant later told daughter that she was responsible for the manure.

In February 2010 appellant drove slowly by B.'s house while B. was standing in the driveway. Appellant "raised her middle finger" and "gave [him] a real threatening gesture."

In March 2010 B. found pieces of a broken golf club on the driveway in front of his garage. The brand of the golf club was Lynx Black Cat. Later that same month, someone shattered four of the six windows of B.'s truck. In the back of the truck, B. found a Lynx Black Cat golf club.

In early April 2010 appellant left a birthday gift for daughter on B.'s front porch. In the morning B. opened the front door, saw the gift, and also saw "glass all over the driveway." The remaining two windows in appellant's truck had been broken.

B. and his daughter obtained restraining orders against appellant. About 1:30 a.m. on April 15, 2010, someone shattered the windows in B.'s dining room, bedroom, and French doors. B. went outside and "saw what appeared to be [appellant] running down the driveway." He then "saw her vehicle leaving the scene." Daughter was awakened and "got really scared." B. noticed that the windshield of his brother's vehicle, which had been parked in the driveway, was also shattered.

Daughter testified that these incidents made her "feel scared and just nervous." Daughter explained: "I was worried maybe my windows would be broken, and I was afraid it [(the broken glass)] was going to go through our blinds." Because of her fear, daughter sometimes stayed at a relative's house. At all times, daughter carried on her person a restraining order prohibiting appellant from contacting her.

*Statutory Construction of the Two Sentences of Section
646.9(k)(1)*

■  Appellant contends that the order restraining her from having contact with daughter was unauthorized because she was not a named victim of the stalking as specified in the first sentence of section 646.9, subdivision (k)(1).

Were we to put horse blinders on and read the first sentence in isolation, she would prevail. This is the literal reading of the first sentence. To so construe the statute we would subscribe to the "dictionary school of jurisprudence." But we do not read the statute "in a way that yields 'a grotesque caricature of the Legislature's purpose.' [Citation.]" (*Unzueta v. Ocean View School Dist., supra*, 6 Cal.App.4th at p. 1703 (dis. opn. of Gilbert, J.).) We read the first sentence in context with the second sentence. We are not "slaves to the tyranny of literalness." (*Ibid.* (dis. opn. of Gilbert, J.).)

The rules of statutory construction support our holding. "[W]ords and provisions in a statute that relate to the same subject matter ' "must be harmonized to the extent possible. [Citation.]" ' " (*People v. Gonzales* (2008) 43 Cal.4th 1118, 1127 [77 Cal.Rptr.3d 569, 184 P.3d 702].) As indicated at oral argument, the second sentence of the section seemingly casts a "wider net" than the first sentence. This is undoubtedly true and we must harmonize the two sentences of the statute. We do that by reading the first sentence and the second sentence "in pari materia." This latin phrase means "upon the same matter or subject. Statutes *in pari materia* are to be construed together. 'Statutes in pari materia' are those relating to the same person or thing or having a common purpose. [Citation.]" (Black's Law Dict. (5th ed. 1979) p. 711, col. 1.)

Thus, we read the two sentences together in determining legislative intent. (See, e.g., *People v. Caudillo* (1978) 21 Cal.3d 562, 585 [146 Cal.Rptr. 859, 580 P.2d 274].) Notwithstanding the phrasing of the statute, it is apparent that the Legislature wants the judiciary to protect the child of a named stalking victim. The statute is "remedial" and consistent with time-honored precedent, must be liberally construed to effectuate the object and purpose of the statute and to suppress the mischief at which it is directed. (See, e.g., *People v. Ormiston* (2003) 105 Cal.App.4th 676, 691 [129 Cal.Rptr.2d 567].) To strictly construe the statute and read the first sentence to the exclusion of the second would defeat Legislative intent and defeat justice. Such a construction would not suppress the mischief at which it is directed. For the same reasons, we cannot construe the second sentence so as to relate only to the length of the restraining order. The second sentence must be read, not in isolation, but in conjunction with the first sentence.

Here, daughter is a person who suffered emotionally and who was traumatized by appellant's conduct. She was the recipient of a previously issued civil restraining order that she carried on her person. Surely, this is a person who is within the "wider net" of the second sentence of the statute. Construing such a person as a victim for purposes of a postconviction restraining order is also consistent with the latest legal definition of "victim": "A person harmed by a crime, tort, or other wrong." (Black's Law Dict. (9th

ed. 2009) p. 1703, col. 1.) It is also consonant with our California Constitu-tion: "As used in this section, a 'victim' is a person who suffers direct or threatened physical, psychological, or financial harm as a result of the commission or attempted commission of a crime or delinquent act. The term 'victim' also includes the person's spouse, parents, children, siblings, or guardian, and includes a lawful representation of a crime victim who is deceased, a minor, or physically or psychologically incapacitated The term 'victim' does not include a person in custody for an offense, the accused, or a person whom the court finds would not act in the best interests of a minor victim." (Cal. Const., art. I, § 28, subd. (e).)

We do not apply the rule of "lenity" and construe the statute "as favorably to the defendant as its language and the circumstances of its application may reasonably permit . . . ." (*Keeler v. Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617].) To be sure, section 646.9, subdivision (k)(1) is a penal statute. But it does not define crime or impose traditional punishment. It imposes what is tantamount to a civil restraining order. It is doubtful whether the rule of "lenity" applies in this situation. In any event, "[t]he general rule [of 'lenity'] applies only when some doubt exists as to the legislative purpose in enacting the law." (*In re Pedro T.* (1994) 8 Cal.4th 1041, 1046 [36 Cal.Rptr.2d 74, 884 P.2d 1022].) As indicated, we have no doubt that the Legislature intends to protect the immediate family of a stalking victim.

### *People v. O'Neal*

In *People v. O'Neal* (2004) 122 Cal.App.4th 817 [19 Cal.Rptr.3d 202], the defendant was convicted of sexually molesting an eight-year-old girl. The defendant contended that the trial court had erroneously ordered him to pay restitution for the cost of psychological counseling for the victim's 12-year-old brother. The defendant argued that the brother was not a crime victim and that only crime victims are entitled to restitution. We upheld the restitution order, reasoning: "[Defendant] assumes that because he did not physically molest him, [brother] cannot be a victim. But compensation is not restricted to physical injuries. [Citation.] The trial court reasonably could infer from [brother's] statements that the emotional damage [defendant] caused was not limited to [sister]. [Brother] also suffered emotionally and was thus a victim." (*Id.*, at p. 821.)

As in *O'Neal*, here the trial court could reasonably infer that appellant's stalking of B. had caused emotional damage to, and traumatized, daughter. In November 2007 when appellant pounded a golf club on the front porch and demanded custody of daughter, daughter "saw her mom and ran to her room, crying." In January 2008 daughter was scared by the threatening message

appellant had left on B.'s answering machine. On Christmas Day in 2008, daughter saw the manure spread "all over [B.'s] porch and driveway." Appellant told daughter that "she did it." On April 15, 2010, daughter was home sleeping when appellant shattered the windows in the dining room, bedroom, and French doors. Daughter was awakened and "got really scared."

These incidents so intimidated daughter that sometimes she would stay at a relative's house. Daughter worried that appellant would break her windows while she was sleeping, and the broken glass would "go through [the] blinds." At all times, daughter carried on her person a court order prohibiting appellant from contacting her because daughter "also suffered emotionally and was thus a victim." (*People v. O'Neal, supra*, 122 Cal.App.4th at p. 821.) Accordingly, pursuant to the rationale of *O'Neal*, the trial court did not err in restraining appellant from having contact with daughter.

### Forfeited Issues

Appellant contends that the restraining order violates her "First Amendment freedom of association and freedom of speech." This contention is forfeited because appellant did not raise it below. (*People v. Ervine* (2009) 47 Cal.4th 745, 783 [102 Cal.Rptr.3d 786, 220 P.3d 820].) Moreover, appellant has not supported it with reasoned argument and analysis. (*People v. Stanley* (1995) 10 Cal.4th 764, 793 [42 Cal.Rptr.2d 543, 897 P.2d 481].) The sole support for the contention consists of four case citations. "Points 'perfunctorily asserted without argument in support' are not properly raised. [Citation.]" (*People v. Williams* (1997) 16 Cal.4th 153, 206 [66 Cal.Rptr.2d 123, 940 P.2d 710]; see *People v. Turner* (1994) 8 Cal.4th 137, 214, fn. 19 [32 Cal.Rptr.2d 762, 878 P.2d 521], overruled on another ground in *People v. Griffin* (2004) 33 Cal.4th 536, 555, fn. 5 [15 Cal.Rptr.3d 743, 93 P.3d 344] [court rejected arguments that were not "sufficiently developed to be cognizable"].)

For the first time in her reply brief, appellant argues that the restraining order constitutes (1) a violation of her due process "liberty interest in raising her daughter," (2) an unlawful "de facto termination of [her] parental rights," and (3) a violation of her "Sixth Amendment rights as outlined in *Apprendi v. New Jersey* (2000) 530 U.S. 466 [166 L.Ed.2d 856, 127 S.Ct. 856]" because "the jury never found that appellant stalked her daughter." These arguments are forfeited because appellant did not raise them in her opening brief. "Withholding a point until the reply brief deprives the respondent of an opportunity to answer it . . . . Hence, a point raised for the first time therein is deemed waived and will not be considered, unless good reason is shown for failure to present it before. [Citations.] No good cause is shown here." (*People v. Baniqued* (2000) 85 Cal.App.4th 13, 29 [101 Cal.Rptr.2d 835], fn. omitted.)

*Disposition*

The judgment is affirmed.

Gilbert, P. J., concurred.

**PERREN, J.,** Dissenting.—I respectfully dissent. M.A.R., the daughter of the victim, B.A.R., is not "a victim" within the meaning of Penal Code[1] section 646.9. She is a member of the victim's immediate family. A charge of stalking naming M.A.R. as the victim was dismissed prior to trial. Contrary to the opinion of my colleagues, I do not believe that section 646.9, subdivision (a) authorizes a "no contact order" in favor of anyone other than the named victim.

The majority is correct when it says, "the immediate family of a stalking victim (§ 646.9, subd. (a))" is entitled to the court's protection. My disagreement is not with our mutual destination but the vehicle we take to get there. I believe, however, that there is more than one way to "skin" a living thought, while not falling into the snare of the "dictionary school of jurisprudence." Rather, I accept that a first principle of statutory construction is "to ascertain the Legislature's intent so as to effectuate the purpose of the statute." (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83 [45 Cal.Rptr.3d 394, 137 P.3d 218].) In so doing it must be recalled that the issue before us is a narrow one: the power of the court to issue a "no contact" order of 10 years' duration in favor of one other than the victim named in the information.

The majority construes section 646.9, subdivision (k), to include the child of a named stalking victim to also be a "victim" for the purpose of issuing a restraining order. The statute, however, distinguishes between the two. The first sentence of subdivision (k) instructs that the court may issue an order "restraining the defendant from any contact with *the victim.*" (Italics added.) The second sentence, however, tells us that in determining the length of the restraining order, the court may consider "the safety of the victim and his or her immediate family." If "victim" was meant to include a child of the family, this qualification would be unnecessary. Moreover the distinction is underscored by section 646.9, subdivision (*l*) where "immediate family"[2] is defined. Had the Legislature intended to include members of the immediate family amongst those entitled to the benefit of a restraining order, it would have said so. It did not.

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

[2] "For purposes of this section, 'immediate family' means any spouse, parent, *child,* any person related by consanguinity or affinity within the second degree, or any other person who regularly resides in the household, or who, within the prior six months, regularly resided in the household." (§ 646.9, subd. (*l*), italics added.)

" '[I]t is a well-established rule of construction that when a word or phrase has been given a particular scope or meaning in one part or portion of a law it shall be given the same scope and meaning in other parts or portions of the law.' [Citation.] 'We can reasonably infer . . . that the Legislature intended the parallel language of the two [statutory] provisions to be construed identically.' [Citation.]" (*Blakely v. Superior Court* (2010) 182 Cal.App.4th 1445, 1453 [106 Cal.Rptr.3d 715] [construing "prior to" in jurisdictional dates in two statutes applicable to mentally disordered offender proceedings].) The language of section 646.9 makes it clear that the Legislature understood the distinction between a "victim" and "the immediate family."

Moreover, any doubt that the Legislature understood this distinction is resolved by recourse to section 136.2, former subdivision (a)(6),[3] which empowers the court to issue restraining orders to protect "a victim" (§ 136.2, subd. (a)) and "immediate family members" in cases of domestic violence.[4] To the same effect are the provisions of the Family Code governing the issuance of emergency protective orders (Fam. Code, §§ 6240–6257), and protective orders and other domestic violence prevention orders (*id.*, § 6300 et seq. and especially § 6320),[5] as well as restraining orders following conviction for the infliction of corporal injury upon a spouse or cohabitant (§ 273.5, subd. (i)).[6] In each of these sections "the victim" is invariably distinguished from members of the victim's family. And these sections are available to protect M.A.R., appellant's daughter.

In sum, there are a number of vehicles to be taken that will achieve the result both the majority and I desire: the protection of the children and of

---

[3] Redesignated section 136.2, subdivision (a)(6)(A). (Stats. 2011, ch. 155, § 1.)

[4] Effective January 1, 2012, subdivision (i) of section 136.2 was added enabling the court to issue restraining orders prohibiting contact with "the victim" pursuant to that section for up to 10 years. Subdivision (i) distinguishes between the victim and the immediate family as does subdivision (a)(6)(A). (See fn. 3, *ante.*)

[5] Family Code section 6320, subdivision (a) provides: "The court may issue an ex parte order enjoining a party from molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning, including, but not limited to, making annoying telephone calls as described in Section 653m of the Penal Code, destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party, and, in the discretion of the court, on a showing of good cause, of other named family or household members." Family Code section 6340, subdivision (a) authorizes such orders after formal hearing for a period of up to five years. (Fam. Code, § 6345.)

[6] Section 273.5, subdivision (i) provides: "Upon conviction under subdivision (a), the sentencing court shall also consider issuing an order restraining the defendant from any contact with the victim, which may be valid for up to 10 years, as determined by the court. It is the intent of the Legislature that the length of any restraining order be based upon the seriousness of the facts before the court, the probability of future violations, and the safety of the victim and his or her immediate family."

family members of a "victim." Any expansion of the reach of section 646.9 rests with the Legislature, not with us.

I would reverse the "no contact" order. The decision to issue other and further restraining orders as permitted by law rests with the trial court.

Appellant's petition for review by the Supreme Court was denied February 20, 2013, S207487.