Filed 5/22/14  P. v. Chirhart CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C070915 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F7137) |
| v. | |
| MARK LEE CHIRHART, | |
| Defendant and Appellant. | |

Defendant Mark Lee Chirhart pleaded no contest to stalking the mother of his child while a restraining order was in effect (Pen. Code, § 646.9, subds. (a) & (b)),[1] and vandalizing her car, a misdemeanor (§ 594, subd. (b)(2)(A)).  Defendant also pleaded no contest to assaulting the mother's new boyfriend by means of force likely to produce great bodily injury, and burglarizing the boyfriend's storage unit.  (§§ 245, subd. (a)(1),

---

[1] Undesignated statutory references are to the Penal Code.

1

459/460.)  The trial court sentenced defendant to state prison for five years eight months and ordered him to have no contact for 10 years with his then eight-year-old daughter or her mother.

On appeal, defendant challenges the 10-year restraining order.  He contends the order prohibiting contact with his daughter was unauthorized because she was not a named victim of any of the counts to which defendant pleaded no contest.  Alternatively, he argues the order is overbroad and violates due process.  The People assert that the daughter can be a "victim" for purposes of a postconviction restraining order (§ 646.9, subds. (a), (k)(1); *People v. Clayburg* (2012) 211 Cal.App.4th 86 (*Clayburg*)), but candidly concede that the trial court here failed, as required by statute, to consider "the seriousness of the facts before the court, the probability of future violations, and the safety of the victim and . . . her immediate family" in determining the length of any restraining order (§ 646.9, subd. (k)(1)).  The People urge us to remand the matter so the court can consider the statutory factors and to provide defendant with a meaningful opportunity to object to the 10-year duration of the restraining order.

We agree with the People on both points and remand the matter for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Defendant met Nancy in 1991, and they were together nearly 20 years.  They have a daughter who was eight years old at the time of these proceedings.

After defendant and Nancy separated in December 2010, defendant developed what the probation officer later characterized as "extremely obsessive behavior" toward Nancy.  On April 16, 2011,[3] defendant broke into Nancy's house and took a camera.  He

---

[2]  Our summary of facts comes from the probation report.

[3]  All date references are in 2011.

also painted the word "slut" on her car. Nancy obtained a restraining order against defendant, but after defendant was served in June with the order, he continued to go to Nancy's house.

By July, there had been four burglaries at Nancy's house, and her personal journal, court documents and photographs of her house and car[4] had been stolen. Defendant admitted stealing a computer tower from the trunk of Nancy's car in August. Also in August, Nancy reported that defendant was at her house and workplace. When a sheriff's deputy reminded defendant he had violated the restraining order when he stopped by Nancy's workplace to talk about their daughter, defendant responded, "Whatever." Apparently undeterred, defendant continued to appear at Nancy's house. Nancy's post office box was broken into, and defendant was later recorded on videotape shopping for his daughter at Wal-Mart with gift cards stolen from Nancy's mailbox.

In September, defendant was involved in an altercation with Nancy's boyfriend, Kenneth S., who reported defendant brandished a six-foot pole or stick. The following month, Kenneth S. reported that someone had broken into his storage unit and stolen a computer hard drive.

In October, defendant confronted Nancy outside a club and asked where their daughter was.

Between April and October, defendant sent over 200 text messages to Nancy; many were sent after he had been served with the restraining order, and some messages were threatening or otherwise disturbing. The restraining order also did not deter defendant from contacting Nancy by cell phone. Between late June and late September, defendant left 16 voice mail messages on Nancy's cell phone. Some messages concerned her work schedule, family court issues, and child visitation complaints. In other messages, defendant made threats about upcoming court dates, and talked about fighting

[4] Nancy took the photographs to document defendant's violation of the restraining order.

Kenneth S. Nancy told officers "the messages made her feel 'mad and afraid, his voice, his tone . . . I feel threatened by it.' "

After defendant was arrested, various items Nancy had reported stolen were found at defendant's prior place of employment.

Defendant was charged with, among other crimes, stalking Nancy, first degree burglary of Nancy's home, fraudulent use of an access card, second degree burglary of Nancy's car, vandalism of Nancy's car, assault with a deadly weapon against Kenneth S., second degree burglary of Kenneth S.'s commercial storage space, and petty theft from Kenneth S. Defendant ultimately pleaded no contest to stalking Nancy while a restraining order was in effect and vandalizing her car. As to Kenneth S., defendant pleaded no contest to assault by means of force likely to produce great bodily injury and burglary of his storage unit. The remaining counts were dismissed with a *Harvey*[5] waiver "for all purposes including restitution and no contact orders."

The presentence report recommended that defendant be sentenced to prison and that he "neither attempt nor have any contact in any manner with, nor be in the presence of" Nancy and others, including defendant's daughter, for an unspecified period.

At sentencing, argument focused chiefly on whether defendant would receive probation. Nancy testified, "I'm still in fear of the every-day harassing, the intentional malicious threats to myself and my daughter, is why I left initially, and why I am afraid. So is my daughter afraid. [¶] And so she misses her dad terribly but she knows that we're better off. Things are peaceful and we're able to continue a more normal life without feeling like he's going to show up and he's outside or that he's looking around the corner. [¶] It's been a whole year of just every day, having to deal with him inflicting his will upon us and blaming me. And I still feel that he does blame me, and is

---

5 *People v. Harvey* (1979) 25 Cal.3d 754 (*Harvey*).

not taking any responsibility for his actions. And I want him to see his daughter some day, but for my daughter's sake, not for his.

"And it's hard to be up here, thinking that she is not going to have a dad. But that's the way it has to be because this last year has been nothing but—just lived a life of being afraid of what [is] going to happen next. And I never wanted anything more than just for him to be a dad to her. And she misses her dad but she knows it's been better without him out there, around every corner. [¶] . . . I just know I feel safer knowing that he's not out and free to cause my daughter and I the mental strain that he has in the last year."

The trial court denied probation, noting, "When a child's mother is in fear of the child's father, he's exacting a punishment on the child, in his activities towards the mother. So based upon the nature, seriousness and circumstances of this crime as compared to others, I find that probation would be completely inappropriate." The court sentenced defendant to prison, and entered a criminal protective order restraining defendant from having any contact with Nancy or their daughter for 10 years, stating, "I can't impose a no-contact order when I'm sentencing him to prison. I can only sign the restraining order."

## DISCUSSION

The trial court entered the restraining order pursuant to subdivision (k)(1) of section 646.9. Subdivision (k)(1) provides: "The . . . court . . . shall consider issuing an order restraining the defendant from any contact with the victim, that may be valid for up to 10 years, as determined by the court. It is the intent of the Legislature that *the length of any restraining order be based upon the seriousness of the facts before the court, the probability of future violations, and the safety of the victim and his or her immediate family*." (Italics added.) "Immediate family" includes a child. (§ 646.9, subd. (*l*) .) Defendant contends the order was unauthorized because his daughter was not a "victim"

5

for purposes of a postconviction restraining order.[6]  The People respond that the recent decision in *Clayburg*, *supra*, 211 Cal.App.4th 86 resolved that issue.  The court in *Clayburg* held that a defendant's child may be a "victim" of the defendant's stalking of the other parent, and a section 646.9, subdivision (k) restraining order may issue to protect the child, even though the child was not named in the stalking counts.  (*Clayburg*, *supra*, at p. 89.)  We agree with the *Clayburg* court.

In *Clayburg*, the named victim of one of the stalking counts was B., the defendant's former husband, who was the father of their 13-year-old daughter and the daughter's custodial parent.  (*Clayburg*, *supra*, 211 Cal.App.4th at pp. 88, 89.)  At trial, there was evidence the defendant pounded a golf club on the front porch of B.'s home and demanded custody of the daughter.  During this episode, the daughter " 'saw her mom and ran to her room, crying.' "  (*Id*. at p. 89.)  The defendant left messages for B. on the home answering machine that " 'The devil wants you.  God is going to let him get you and you are going to like it because you are his [the devil's] brother,' " and the daughter testified that the message " 'made [her] scared.' "  (*Id*. at pp. 89, 90.)  The defendant smeared manure all over the porch and driveway of the house B. shared with

---

[6] Defendant argues that the restraining order violates section 136.2 because his daughter is not a victim of a crime of domestic violence under former subdivision (i) of that section, which states, "In all cases in which a criminal defendant has been convicted *of a crime of domestic violence as defined in Section 13700*, the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact with the victim.  The order may be valid for up to 10 years, as determined by the court. This protective order may be issued by the court regardless of whether the defendant is sentenced to the state prison or a county jail, or whether imposition of sentence is suspended and the defendant is placed on probation.  It is the intent of the Legislature in enacting this subdivision that the duration of any restraining order issued by the court be based upon the seriousness of the facts before the court, the probability of future violations, and the safety of the victim and his or her immediate family."  (Italics added.) But the trial court issued the order here under section 646.9, subdivision (k), checking off the appropriate box on Judicial Council form CR-160.  Accordingly, we consider only whether the order was authorized under this section.

his daughter.  (*Id*. at p. 90.)  B. and his daughter obtained restraining orders against the defendant (*ibid*.), but soon thereafter, several house windows and the windshield of a car parked in the driveway were shattered; B. saw the defendant running away, and saw her car leaving the scene (*ibid*.).  Defendant's daughter " 'got really scared' " by the event.  (*Ibid*.)  The daughter testified that these incidents made her "feel scared and just nervous" and she " 'was worried maybe my windows would be broken, and I was afraid it [(the broken glass)] was going to go through our blinds.' " (*Ibid*.)  Because of her fear, the defendant's daughter sometimes stayed at a relative's house and she always carried a restraining order prohibiting the defendant from contacting her.  (*Ibid*.)  After the defendant was convicted by a jury, the court sentenced her to prison for two years eight months, and ordered she have no contact with her daughter for 10 years.  (*Id*. at p. 88.)

In upholding the 10-year restraining order, the appellate court in *Clayburg* rejected the defendant's assertion that the order was unauthorized because her daughter was not a named victim of the stalking.  (*Clayburg*, *supra*, 211 Cal.App.4th at pp. 90-93.)  In doing so, the court reasoned from the first and second sentences in section 646.9, subdivision (k)(1) that a restraining order protecting the child of the victim could validly be issued, even when the child was not a named victim.  The first sentence of section 646.9, subdivision (k)(1), provides in pertinent part, "The . . . court . . . shall consider issuing an order restraining the defendant from any contact with the victim, that may be valid for up to 10 years, as determined by the court."  The second sentence provides, "It is the intent of the Legislature that the length of any restraining order be based upon the seriousness of the facts before the court, the probability of future violations, and the safety of the victim *and his or her immediate family*."  (§ 646.9, subd. (k)(1), italics added; *Clayburg*, *supra*, 211 Cal.App.4th at pp. 88-89.)  The court reasoned that a restraining order protecting the child of the named victim was authorized because "the Legislature intends that the courts protect a child of a named victim.  The second sentence [of section 646.9, subdivision (k)(1)], to a certainty, shows that the Legislature has a legitimate concern for

7

the 'safety' of a child of a named victim. We also observe that the actual definition of the crime of stalking speaks to the fear suffered by a member of the named victim's 'immediate family.' (§ 646.9, subd. (a).) Our construction of the statute 'promotes justice.' A contrary construction would, in our view, defeat justice." (*Id.* at p. 89.)

The *Clayburg* court concluded that because the defendant's daughter suffered emotionally, was traumatized by the defendant's conduct, and was the recipient of a previously issued civil restraining order she felt compelled to carry at all times, the daughter surely "is a person who is within the 'wider net' of the second sentence of [section 646.9, subdivision (k)(1)]. Construing such a person as a victim for purposes of a postconviction restraining order is also consistent with the latest legal definition of 'victim': 'A person harmed by a crime, tort, or other wrong.' (Black's Law Dict. (9th ed. 2009) p. 1703, col. 1.)" (*Clayburg, supra,* 211 Cal.App.4th at pp. 91-92; cf. *People v. O'Neal* (2004) 122 Cal.App.4th 817; see *O'Neal,* at p. 819 [12-year-old brother of younger molestation victim "suffered emotionally and was thus a victim" for whom restitution was properly ordered].)

We agree with the *Clayburg* court. Section 646.9, subdivision (k)(1) allows the trial court to restrain a defendant convicted of stalking from contacting the child of the named stalking victim when the child was also victimized, regardless of whether the child is also named as a victim in a charging document. And we agree with the People that Nancy's testimony at sentencing supports issuance of a postconviction protective order restraining defendant from contacting his daughter.

We also agree with the People that the trial court erred. The court was required by section 646.9, subdivision (k)(1) to exercise its discretion to determine the proper length of the protective order based upon: (1) the seriousness of the facts before the court, (2) the probability of future violations, and (3) the safety of the victim and her immediate family. Nothing in the record suggests the court considered these factors or any other factors in fashioning the restraining order prohibiting defendant from having any contact

8

with his daughter for 10 years.  Indeed, the presentence report did not recommend any particular length of time for the restraining order, and the trial court said nothing at sentencing that indicates it understood it had discretion to choose the time period for the restraining order or that it should consider the factors outlined by the Legislature.

The prosecutor, after requesting that the trial court sentence defendant to the maximum term, finished her remarks by saying, "And I do have the 10-year criminal protective order that I'm going to request."  In arguing the issue of sentencing, defendant did not mention the protective order.  In the middle of the discussion about fines, the court stated, "Hang on a second.  You're not to—we'll have that restraining order.  I can't impose a no-contact order when I'm sentencing him to prison.  I can only sign the restraining order."  Later, the following was said:

"THE COURT:  . . . I am assuming you filled out this restraining order in the manner in which you wanted it to be signed?  Did you review it to make sure?

"[THE PROSECUTOR]:  I'm not sure I put the date it would expire on it.

"THE COURT:  Why don't you complete it before I sign and have him sign it."

From the discussion about the restraining order at the sentencing hearing, it appears the court set the 10-year duration simply because the prosecutor desired that duration.  This exchange also indicates defendant was not informed about the length of time the court (not the prosecutor) considered appropriate for a restraining order prior to the court signing the order; nor was defendant informed about the trial court's reasoning.  Under these circumstances, the People concede, defendant had no meaningful opportunity to object to the duration of the restraining order at sentencing.  Had he had such an opportunity, defendant could have argued that a restraining order, if any were imposed, should be of a shorter duration.

On remand, defendant may raise in the trial court in the first instance the additional constitutional considerations he seeks to raise on appeal.  (Cf. *Clayburg*, *supra*, 211 Cal.App.4th at p. 93 [declining to consider as forfeited the defendant's claims that

9

the restraining order constituted a violation of her due process liberty interest in raising her daughter and an unlawful de facto termination of her parental rights].)

## DISPOSITION

The judgment of conviction and sentence are affirmed.  The postconviction restraining order prohibiting defendant from having contact with his daughter for 10 years is vacated, and the matter is remanded for further proceedings consistent with this opinion.


                  MURRAY       , J.


We concur:


      ROBIE       , Acting P. J.


      DUARTE      , J.