Filed 11/21/22  P. v. Franco CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANTHONY FRANCO,<br><br>    Defendant and Appellant. | D080000<br><br><br>(Super. Ct. No. SCS300168) |

APPEAL from a judgment of the Superior Court of San Diego County, Michael J. Popkins, Judge.  Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Genevieve Herbert, Deputy Attorneys General, for Plaintiff and Respondent.

Following Anthony Franco's guilty plea to assault with a semi-automatic firearm (Pen. Code, § 245, subd. (b); count 2)[1] and his admission to enhancement allegations that he personally inflicted great bodily injury (§ 12022.7, subd. (e)) on victim R.S. under circumstances involving domestic violence, the court sentenced Franco to a stipulated term of 15 years total. The court also issued a 10-year protective order naming as protected parties R.S. and her daughter with Franco, E.F.

Franco only appeals the protective order, contending that: (1) the order is overbroad and should be modified to exclude daughter E.F. from its scope because she was not a "victim," her inclusion as a protected party has no statutory basis, and the order is unconstitutionally overbroad; and (2) the court erred in applying a preponderance of the evidence standard instead of a clear and convincing standard.

We disagree with Franco's contentions and conclude the court properly issued the protective order under section 136.2, subdivision (i)(1) because E.F. is a "victim" as broadly defined by statute. We further conclude that Franco has failed to establish any reversible error as to the burden of proof applied by the trial court. Accordingly, we affirm the judgment and protective order.

FACTUAL AND PROCEDURAL BACKGROUND

R.S. and Franco began dating in 2016, and their daughter E.F. was born in October 2017. They had an on-and-off relationship punctuated by violent incidents, including times when Franco slapped R.S. and pulled her hair. In January 2018, R.S. had to get stitches in her eyebrow because

---

[1]     Further statutory references are to the Penal Code unless otherwise stated.

2

Franco punched her in the face. After R.S. sought a restraining order against Franco, he sent her a picture of a gun and threatened to kill her.

In early April 2018, Franco got angry in R.S.'s apartment when she asked him not to smoke methamphetamine around E.F., who was still an infant. Franco pushed R.S., then beat her until she lost consciousness. A week later, they got into another argument in R.S.'s bedroom after Franco accused R.S. of infidelity. At one point Franco drew a gun and pointed it at R.S.'s forehead at close range. R.S. swatted the gun away, but Franco raised it again at R.S.'s chest with his finger on the trigger. R.S. turned just before Franco shot her in the arm. E.F. was in the bed nearby in the same room during the incident, and Franco picked her up with one arm while holding the loaded gun in his other hand. He put E.F. on the sofa, but she rolled down onto the floor. R.S. suffered a shattered humerus from being shot in the arm and later required surgery.

After being charged with several counts in connection with the shooting, including child abuse as to E.F. (§ 273a, subd. (a); count 4), Franco pled guilty to one count of assault with a semi-automatic firearm (§ 245, subd. (b); count 2) and admitted to enhancement allegations that he personally inflicted great bodily injury (§ 12022.7, subd. (e)) on R.S. under circumstances involving domestic violence.[2] Franco also admitted to a strike prior conviction pursuant to sections 667, subdivisions (b)-(i), and 1170.12. Pursuant to the plea agreement, the remaining charges were dismissed with

---

[2]    The other charges included attempted murder of R.S. (§§ 187, subd. (a), 664; count 1); assault of R.S. with a semi-automatic firearm (§ 245, subd. (b); count 3); possession of a firearm by a felon (§ 29800, subd. (a)(1); count 5); unlawful possession of ammunition (§ 30305, subd. (a)(1); count 6); corporal injury of a spouse or cohabitant (§ 273.5, subdivision (a); counts 7 and 8); and making a criminal threat (§ 422; count 9).

a *Harvey* waiver.  (See *People v. Harvey* (1979) 25 Cal.3d 754, 758 (*Harvey*) [defendant may agree to the court's consideration of dismissed counts for sentencing purposes].)  The court sentenced Franco to a stipulated term of 15 years total.

At the sentencing hearing, the court granted R.S.'s request for a 10-year criminal protective order for herself and E.F.  The court ordered that Franco have "no personal, electronic, telephonic or written contact with" R.S. and E.F. during the 10-year period.  Franco's attorney requested that the court exclude E.F. from the order, asserting that Franco did not attempt to harm his daughter during the altercation with R.S.  The court denied his request, noting that Franco "pointed a gun at [R.S.'s] head" and when the gun went off, E.F. was present in the same room.

Franco timely appealed.

DISCUSSION

I

*A.  E.F. Was A "Victim" Within the Meaning of Section 136.2*

Franco first contends the court erred by including E.F. as a protected party in the protective order because she was not a "victim" who falls within the scope of section 136.2.  We disagree.

"When interpreting a statute, we view the statutory enactment as a whole; consider the plain, commonsense meaning of the language used in the statute; and seek to effectuate the legislative intent evinced by the statute." (*People v. Beckemeyer* (2015) 238 Cal.App.4th 461, 465 (*Beckemeyer*).)  Section 136.2, subdivision (i)(1) provides, in relevant part:  "When a criminal defendant has been convicted of a crime involving domestic violence as defined in [s]ection 13700 or in [s]ection 6211 of the Family Code, . . . , the court, at the time of sentencing, shall consider issuing an order restraining

4

the defendant from any contact with a victim of the crime. The order may be valid for up to 10 years, as determined by the court. . . . It is the intent of the Legislature in enacting this subdivision that the duration of a restraining order issued by the court be based upon the seriousness of the facts before the court, the probability of future violations, and the safety of the victim and the victim's immediate family."

Section 13700, subdivision (b), defines " '[d]omestic violence' " as "abuse committed against an adult or a minor who is a spouse, former spouse, cohabitant, former cohabitant, or person with whom the suspect has had a child or is having or has had a dating or engagement relationship." Family Code section 6211, subdivision (e), includes abuse perpetrated against "[a] child of a party" in the definition of " 'domestic violence.' "

For purposes of a protective order issued under section 136.2, "victim" is defined in section 136 as "any natural person with respect to whom there is reason to believe that any crime as defined under the laws of this state . . . is being or has been perpetrated or attempted to be perpetrated."

In *Beckemeyer*, *supra*, 238 Cal.App.4th at page 463, this court concluded a third person who was assaulted during a domestic violence incident met the definition of a victim for purposes of a protective order issued pursuant to section 136.2, subdivision (i)(1). In that case, an adult child of the person being beaten attempted to intervene, and the perpetrator then attacked the adult child. (*Beckemeyer*, at p. 464.) We noted that the broad definition of "victim" in section 136 for purposes of a protective order included "any person against whom there is reason to believe a crime has been committed." (*Beckemeyer*, at p. 466.) We concluded "the Legislature was aware of this broad definition of victim generally applicable to section 136.2 protective orders, and it did not enact a provision narrowing its scope

5

for purposes of a postconviction domestic violence protective order." (*Ibid*; see *People v. Clayburg* (2012) 211 Cal.App.4th 86, 90–93 (*Clayburg*) [restraining order appropriate under section 646.9, subd. (k)(1), for child of stalking victim who suffered fear and emotional harm from defendant's conduct because the child was also a victim even though she was "not a named victim of the stalking"].)

Similarly, we conclude E.F. was a victim of domestic violence within the statutory scheme's broad definition because the evidence establishes reason to believe a crime was committed against her. Franco agreed to a *Harvey* waiver, and the court was entitled to consider facts related to the dismissed child abuse count under section 273a, subdivision (a) (count 4). (See *Harvey*, *supra*, 25 Cal.3d at p. 758; see also *People v. Race* (2017) 18 Cal.App.5th 211, 220 (*Race*) ["in considering the issuance of a criminal protective order, a court is not limited to considering the facts underlying the offenses of which the defendant finds himself convicted, regardless of the execution of a *Harvey* waiver . . . . [A] court may consider all competent evidence before it."].)

Section 273a, subdivision (a), makes it a felony to, "under circumstances or conditions likely to produce great bodily harm or death," willfully cause or permit a child in one's care or custody "to be placed in a situation where his or her person or health is endangered[.]" (See also CALCRIM No. 821 [jury instruction on "Child Abuse Likely to Produce Great Bodily Harm or Death"].) As stated in CALCRIM No. 821, the child "does not need to actually suffer great bodily harm[]" for a defendant to be liable. (See *People v. Cortes* (1999) 71 Cal.App.4th 62, 80 ["there is no requirement that the victim suffer great bodily harm"].) Moreover, the Legislature has recognized that "[c]hildren, even when they are not physically assaulted, very

often suffer deep and lasting emotional effects" of domestic violence. (Welf. & Inst. Code, § 18290.) Section 136.2, subdivision (a)(2), likewise recognizes that for purposes of obtaining a pre-conviction protective order, a minor who is present during an act of domestic violence is deemed to have suffered harm.

Here, E.F. was present in the same room when Franco aimed his loaded firearm at R.S. multiple times, with his finger on the trigger, before shooting R.S. in the arm. When R.S. swatted the gun away, it could have discharged and shot E.F. After the shooting, Franco picked E.F. up and held her while holding the loaded firearm in his other hand, then placed her on the couch before she fell onto the floor. These facts established reason to believe that Franco committed a crime against E.F. (§ 273a, subd. (a).)

The facts here are distinguishable from *People v. Delarosarauda* (2014) 227 Cal.App.4th 205, 211–212 (*Delarosarauda*), in which the Court of Appeal determined that a victim's children should not be included in the protective order under section 136.2, subdivision (i)(1), because "no evidence suggest[ed] that [the defendant] ever attempted to harm" the children. The victim in *Delarosarauda* stated the defendant " 'never touched' " the children, and she believed they were in another room at the time of the incident. (*Delarosarauda*, at p. 211.) There was also no evidence that the defendant used or discharged a loaded firearm in the presence of the children. And unlike in this case, the defendant in *Delarosarauda* was not bound over on a child abuse charge naming the children as victims. (*Id.* at p. 208.)

Although Franco was not ultimately convicted of child abuse because he pled guilty to a different charge, the evidence shows there was reason to believe Franco endangered E.F.'s health under circumstances likely to produce great bodily harm or death. Accordingly, we conclude E.F. is a

7

"victim" as broadly defined under section 136.2, and the court properly included E.F. in the protective order.

*B. Factors in Section 136.2, Subdivision (i)(1), Relate to Protective Order's Duration*

Franco next argues that statutory factors listed in section 136.2, subdivision (i)(1), do not support including E.F. in the protective order. Franco cites the portion of that subdivision which states: "It is the intent of the Legislature in enacting this subdivision that the *duration* of a restraining order issued by the court be based upon the seriousness of the facts before the court, the probability of future violations, and the safety of a victim and the victim's immediate family." (§ 136.2, subd. (i)(1), italics added.) He contends that E.F. should be excluded because he will be incarcerated while the protective order is in effect, so there is no probability of future violations and E.F.'s safety will not be threatened.

California appellate courts have differed over whether trial courts should rely on these factors when it comes to the scope, and not just the duration, of protective orders issued under statutes containing similar language. In *Clayburg, supra*, 211 Cal.App.4th at pages 89, 91–92, the court affirmed the inclusion of a stalking victim's daughter in a protective order by applying a similar sentence listing factors for determining the "length of any restraining order" in section 646.9, subdivision (k)(1), and reading it together with the preceding sentence addressing "victim[s]" more broadly.[3] In

---

[3] Section 646.9, subdivision (k)(1) provides: "The sentencing court shall also consider issuing an order restraining the defendant from any contact with the victim, that may be valid for up to 10 years, as determined by the court. It is the intent of the Legislature that the length of any restraining order be based on the seriousness of the facts before the court, the probability of future violations, and the safety of the victim and his or her immediate family."

8

contrast, the Court of Appeal in *Delarosarauda, supra,* 227 Cal.App.4th at page 212, disagreed with *Clayburg* and interpreted such language "to mean what it says: the court should consider, among other factors, the 'safety of the victim and his or her immediate family' in determining the length of the restraining order[,]" ultimately concluding that "[n]othing suggests" those factors also modify "the scope of the restraining order."

Given the plain language of section 136.2, subdivision (i)(1), we agree with the reasoning in *Delarosarauda* and conclude that the listed factors apply when determining the *duration* of a postconviction protective order under section 136.2, not the scope. Because Franco does not challenge the order's 10-year duration in his appeal, and because we have already determined that E.F. is a "victim" who falls within the ambit of a protective order under section 136.2, subdivision (i)(1), we reject Franco's argument that factors such as safety and probability of future violations support excluding E.F. from the order.

## C. The Protective Order Is Not Overbroad

Franco contends that by limiting his contact with E.F., the protective order is overbroad and must be modified because it violates his liberty interest as a parent. We disagree, concluding that the state's compelling interest in protecting domestic violence victims justifies the scope of the order imposed here.

We acknowledge that Franco does have a constitutional liberty interest in being permitted to contact his child. (See *Santosky v. Kramer* (1982) 455 U.S. 745, 752–756.) But a parent's constitutional liberty interests must sometimes yield temporarily in situations like these, where a child falls victim to that parent's violent actions. (See, e.g., *In re S.H.* (2003) 111 Cal.App.4th 310, 317 ["the parents' interest in the care, custody and

9

companionship of their children is not to be maintained at the child's expense"].) "The elimination of domestic violence is a compelling state interest. The Legislature's stated purpose in enacting the Law Enforcement Response to Domestic Violence Act (§§ 13700-13731; Stats. 1984, ch. 1609, § 3, p. 5713) was 'to address domestic violence as a serious crime against society and to assure the victims of domestic violence the maximum protection from abuse which the law and those who enforce the law can provide.' (Stats. 1984, ch. 1609, § 1, p. 5711.)" (*People v. Jungers* (2005) 127 Cal.App.4th 698, 704.) Although the protective order curtails Franco's rights as a parent, we conclude that the order legitimately and reasonably operates to accomplish the state's compelling interest in protecting victims of domestic violence, including children who are put at risk by violence committed by one parent against another in their presence.

Additionally, as the People note in their brief, Franco is not without avenues for seeking subsequent relief because "section 136.2 provides mechanisms for cooperation between the criminal, juvenile, and family law courts to permit communication by the subject of the criminal protective order with members of his family if appropriate." (*Race, supra*, 18 Cal.App.5th at p. 220; § 136.2, subds. (e)(3), (f); *Delarosarauda, supra*, 227 Cal.App.4th at p. 211.)

We therefore find no grounds for modifying the court's order based on Franco's argument that it is overbroad.

## II

Franco argues next that the court erred in applying a preponderance of the evidence standard instead of a clear and convincing standard. Specifically, he contends that due process requires that the more heightened standard apply to adequately protect his liberty interest as a parent.

As an initial matter, it is unclear from the record which standard of proof the court applied because none was mentioned at Franco's sentencing hearing. Both parties presume the court applied a preponderance of the evidence standard because section 136.2, subdivision (i)(1) does not specify which standard applies, and Evidence Code section 115 provides that "[e]xcept as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence."

Even assuming that the trial court did apply a preponderance of evidence standard—and even if it should have applied a clear and convincing evidence standard—Franco makes no persuasive argument as to why any such error would be prejudicial. Although Franco claims in his brief that the location of the parties at the time of the shooting "is not entirely clear," he does not dispute the critical fact that he shot R.S. in the bedroom when E.F. was nearby on the bed in the same room. Nor does he dispute that he held E.F. with a loaded gun in his hand and moved her to the sofa, where she then rolled onto the floor. Because the underlying facts establishing that E.F. was a "victim" within the broad meaning of section 136.2 were essentially undisputed, we conclude that any error in failing to apply the clear and convincing evidence standard would be harmless under any standard. (See *Conservatorship of Maria B.* (2013) 218 Cal.App.4th 514, 533 [finding no prejudice where appellant "failed to explain how the result would have been any different if the trial court had applied the clear and convincing evidence standard of proof instead of the preponderance of the evidence standard"].)

Accordingly, we find no reversible error in the court's application of the standard of proof.

## DISPOSITION

The judgment and protective order are affirmed.


                                                                    BUCHANAN, J.

WE CONCUR:



MCCONNELL, P. J.



IRION, J.