Filed 7/5/24  P. v. Torrez CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B329943 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA090463) |
| v. | |
| OSCAR TORREZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joseph A. Brandolino, Judge.  Affirmed in part, reversed in part, and remanded with directions.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Oscar Torrez was accused of breaking into the home of Christian Alcaraz and Raquel Segovia while Christian's mother was alone in the home with the couple's son and nephew.[1] Torrez was arrested and his home—occupied by at least six people—was searched; two assault weapons were found in his home, in what appeared to be a garage. Torrez was charged with two counts of robbery, one count of burglary, two counts of possession of an assault weapon, two counts of being a felon in possession of a firearm, and one count of unlawful possession of ammunition.

A month before the October 2022 trial, the People made a disclosure to the court. The court shared the disclosure with Torrez's counsel in an in-camera hearing but admonished him not to disclose the information to Torrez himself; the transcript from the in-camera hearing was sealed. One month later, Torrez made a motion to unseal that transcript. The court denied the motion and the transcript of the hearing on the motion was itself sealed.

A jury convicted Torrez on all counts and found true that he used a firearm in the burglary and robbery. The trial court subsequently sentenced him to 22 years in prison; the sentence included multiple firearm enhancements.

After trial, Torrez made a motion for "discovery of *Brady* information in a police personnel file."[2] The court partially

---

[1] Because some of the individuals discussed herein share a surname, we refer to them by their first names.

[2] (*Brady v. Maryland* (1963) 373 U.S. 83.) Prosecutors "have a duty under Brady v. Maryland to disclose all exculpatory evidence to the defense." (Levenson & Ricciardulli, Cal. Practice Guide: Criminal Procedure (The Rutter Group 2023) ¶ 16:4.) As discussed *infra*, the trial court expressly permitted the defense to
*(Fn. is continued on the next page.)*

granted the motion, conducted an in-camera review of the potentially responsive information, and disclosed the portions it felt were responsive. It subsequently denied a supplemental motion for further discovery.

On appeal, Torrez asks us to independently review the court's decisions on what was and was not disclosed in response to the discovery motion. He also contends the court erred in sealing the September and October 2022 hearing transcripts regarding the People's disclosure and Torrez's subsequent attempt to unseal that transcript, that one of the firearm enhancements must be dismissed under Penal Code section 1385, subdivision (c),[3] and that there is insufficient evidence to support his convictions for possession of an assault weapon or being a felon in possession of a firearm.

We conclude that only Torrez's final argument has merit. As such, we reverse the convictions for possession of an assault weapon and being a felon in possession of a firearm, affirm the remainder of the judgment, and remand for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND[4]

### A. *Torrez Is Charged*

In October 2019, Torrez was charged by information with nine counts: three counts of first degree residential robbery

---

file such a motion after trial in lieu of granting a trial continuance.

[3] Undesignated statutory references are to the Penal Code.

[4] We limit our summary to the facts and procedural history relevant to the issues raised on appeal.

(counts 1, 2, and 9),[5] one count of first degree burglary with a person present (count 3), two counts of possession of an assault weapon (counts 4 and 5), two counts of being a felon in possession of a firearm (counts 6 and 7), and one count of unlawful possession of ammunition (count 8).  It was further alleged that in committing the robbery and burglary, Torrez personally used a handgun.  Torrez pled not guilty to all counts and denied any allegations.[6]

### B.    *Motion to Unseal Transcript*

On September 8, 2022, after the People made a disclosure to the court, the court held an in-camera hearing with both counsel present, but with Torrez absent.  The hearing was transcribed but the transcript was sealed.  On the record in open court, the court related the fact that the conference had occurred and declared that "the information disclosed by the People is not relevant to the case" and the court "ordered counsel not to disclose it" to his client.

In October 2022, Torrez moved to unseal the September 2022 transcript, arguing that the information contained therein was pertinent to attacking a witness's credibility.  The court

---

[5] In July 2020, count 9 was dismissed under section 995.

[6] In October 2022, an amended information was filed with the same charges but with additional circumstances in aggravation alleged.  Torrez again pled not guilty and denied all allegations.

4

denied the motion.  The court also sealed the transcript from the hearing on the motion.[7]

### C.  *Torrez Seeks to Continue Trial*

After numerous continuances—Torrez had posted bail and was not in custody and agreed to each continuance—trial was set for October 11, 2022.

On October 4, 2022, Torrez was notified that "a number of the officers named in the People's Witness List *may* have information in their personnel file that *may* be 'potentially exculpatory or used for impeachment.' "  On October 11—i.e., the first day of trial—Torrez filed a motion to continue trial because he needed time to file a motion to request an in-camera review of the officers' personnel files.  Because jurors were already present and because of the age of the case, the court denied the motion to continue, but stated that Torrez would be permitted to file his discovery motion both during and after trial and, if discoverable information was found, the court could declare a mistrial or reverse a conviction if appropriate.

### D.  *Trial*

A jury was empaneled on October 12, 2022, and the court issued preliminary instructions to the jury.  Subsequently, the jury heard from 16 witnesses for the prosecution over five days of testimony.  No witnesses testified on Torrez's behalf.

---

[7] In December 2023, Torrez's appellate counsel requested permission to view both the September and October 2022 sealed transcripts.  We granted the request.

### 1. Testimony

We briefly summarize the witness testimony relevant to this appeal.

### (a) Lilia Alcaraz

Lilia testified that she had a son named Christian, who was married to Raquel. Christian and Raquel were parents to 18-month-old Mateo. Raquel had a sister, Debbie, who was the mother of four-year-old Jax.

On April 10, 2019, as she did every day, Lilia went to Christian's home to take care of Mateo and Jax. She arrived between 7:00 a.m. and 7:15 a.m., and Christian left approximately 10 minutes later. Jax was dropped off sometime thereafter.

Around 12:40 p.m., two men entered the house. She identified Torrez as one of the men and Amador Quintero as the other. Quintero pointed a gun at her and told her to "get inside."[8] While Quintero was doing this, Lilia noticed Torrez with some "papers."

The men led her to a couch and Torrez told her to sit down; he told Amador to "go and find things." Amador handed Torrez the gun and Torrez prevented Lilia from leaving the couch. After Lilia informed him that there were children in the house, he escorted Lilia to their room and then made all three sit on the couch. They sat on the couch for approximately three hours. She

---

[8] In attempting to get a description of the gun, the prosecutor asked Detective Kohl, who was sitting at counsel table with the prosecutor, to show his gun to the witness. Lilia testified that Quintero's gun was "like that[,] more or less, but it was smaller."

could hear Amador "destroying everything, moving things around, looking all over the place." At some point, Torrez asked Lilia where the money was and Lilia replied that they did not have money, only credit cards.

Torrez and Amador tied Lilia to a railing inside the house using plastic zip-ties. About twenty to thirty minutes later, Debbie arrived at the home to pick up her son. Torrez and Amador pulled her into the house and zip-tied her hands behind her back. The men left about ten minutes later.

### (b)   Debbie Segovia

Debbie testified that, in April 2019, she would leave Jax in Lilia's care at the house of Christian and Raquel from around 7:50 a.m. to 3:00 p.m. On April 10, 2019, when she went to pick Jax up, she was on the phone with Raquel; Raquel had called Debbie saying that Lilia was not answering the phone, so the sisters stayed on the phone until Debbie arrived at the house. When she arrived, she saw a white car that was not usually there. As Debbie walked up to the front door, it opened, and Debbie saw Torrez and another person. Debbie said, "What the fuck are you guys doing here, there is kids here." Torrez pointed a gun at her and either he or the other person took her phone and terminated the call with Raquel.[9] Debbie saw Lilia zip-tied to the railing. Torrez told Debbie to turn around and kneel, and then her hands were zip-tied. Torrez and the other man left 10 to 20 minutes later.

---

[9] Debbie testified that the gun was "a small gun," similar to the one Detective Kohl was carrying.

### (c)     Raquel Segovia

On April 10, 2019, Raquel left for work around 6:00 a.m., leaving Mateo in the care of her husband Christian, who would hand him off to Lilia when she arrived.  Debbie was also going to drop Jax off.

Throughout the day, Raquel had called Lilia more than 20 times, but she had not been answering the phone, which was unusual.  Raquel called Debbie as Debbie was on the way to the house and asked that Debbie stay on the phone with her.  When Debbie arrived at the home, Raquel asked her to go inside. Raquel heard her say, "What the fuck are you doing here?" before the call was terminated on Debbie's end.  Raquel unsuccessfully tried to call Debbie back and then called 911.  Raquel raced home and when she went inside, saw Debbie with her hands zip-tied behind her, and Lilia zip-tied to a railing.  The house was in disarray.  Some money and an iWatch were missing.

### (d)     Alejandro Valencia

Valencia testified that he was a detective with the Los Angeles Police Department and was asked to help investigate the incident.  As part of that investigation, he was provided with a manilla envelope that had been left in the home by the suspects. The envelope bore the name "Oscar Torres" [*sic*] and also had Torrez's address.  Valencia researched both Oscar Torres and Oscar Torrez, and matched Oscar Torrez to the address on the envelope.  Valencia also reviewed social media accounts for Torrez and his wife.

Torrez's counsel only asked Valencia whether he ran a DMV check for Torrez and, if he did, whether Torrez spelled his name with a "Z" on his license.  Valencia replied that he did not recall if he ran a DMV check but based on his common practice,

he probably did.  He did not recall whether Torrez spelled his name with a "Z" on his license.

### (e)    Carlos Moreno

Moreno testified that he was a police officer and was tasked to serve a search warrant at Torrez's home.  He confirmed that photographs taken of items seized at Torrez's house included pictures of rifles, magazines, and ammunition.  Though unclear from the testimony and the photographs, it appears that the rifles were found in a garage.  He also stated that there were six occupants in the house.

### (f)    Forrest Yumori

Yumori testified that he was a criminalist working for the Los Angeles Police Department, analyzing DNA samples. Yumori was asked to analyze DNA on two rifles.  One had five DNA profiles on it, which was too many to analyze—he could determine only that there were at least two male profiles amongst the five.  The other rifle—a Norinco—had three DNA profiles on it, including at least one male.  However, there was "limited support" to conclude that Torrez's DNA was *not* one of those three DNA profiles; Yumori explained that "limited support" meant they could not conclusively exclude his DNA, but it was "slightly in favor" of concluding his DNA was absent from the samples on the rifle.  He also was able to determine that there were three DNA profiles on a rifle magazine, including at least two males, but he was able to exclude Torrez from those DNA profiles.

### (g)    Matthew Saucedo

Saucedo testified he was a criminalist working for the Los Angeles Police Department in the Firearm Analysis Unit. He analyzed the two rifles relevant to the case: a GP WASR-10/63 and a Norinco. He testified they were both "assault rifles."

### 2.    Jury Instructions

Regarding counts 4 and 5 (possession of an assault weapon), the court instructed the jury that the People were required to prove that Torrez "possessed an assault weapon," specifically "as to count four, a brown Norinco AK-style rifle," and "as to count five, a black model GPW SAR [*sic*] AK-style rifle." Regarding counts 6 and 7 (being a felon in possession of a firearm), the court instructed the jury that the People were required to prove that Torrez "possessed a firearm," specifically "as to count six, a brown Norinco AK-style rifle," and "as to count seven, a black model GPW SAR [*sic*] AK-style rifle."

### 3.    Torrez is Convicted

The jury deliberated for less than two hours before finding Torrez guilty on all counts. It also found that Torrez had used a firearm in committing the robbery and burglary. As to counts 4 and 5, the jury specifically found Torrez guilty of "the crime of possession of assault weapon, to wit, a brown Norinco AK rifle" and "the crime of possession of an assault weapon, to wit, a black model GPWSARAK [*sic*] rifle." Similarly, as to counts six and seven, the jury specifically found Torrez guilty of "the crime of possession of a firearm, to wit, a brown Norinco AK rifle, by a felon" and "the crime of possession of a firearm, to wit, a black model GPWSARAK [*sic*] rifle, by a felon."

#### 4. Torrez Seeks Discovery

On November 21, 2022, Torrez filed a motion for "discovery of *Brady* information in a police personnel file," requesting all "*Brady* . . . information" regarding thirteen police officers. On December 5, 2022, the court granted the motion only as to Alejandro Valencia, because he was the only officer of the thirteen who had testified at trial. The court conducted an in-camera inspection of the records relating to Valencia on December 14, 2022, and ordered the disclosure of some of the information.

In February 2023, Torrez filed a motion for "supplemental *Pitchess* discovery,"[10] asking for "copies of all statements made by the following persons who either filed complaints about Officer Alejandro Valencia (#36292) or who were interviewed during the investigation of such complaints"; he listed four individuals.

In March 2023, the court denied the motion, "easily find[ing] that there is no probability that the evidence requested by the Defense in their supplemental motion would have affected the result of the trial." The court elaborated that "the requested evidence of complaints against the officer would not have been admissible at trial. They are all hearsay. Also, more importantly, I think they were remote. All were between 2003 and 2008 and would not have been admitted under Evidence Code Section 352." The court also noted that "Officer Valencia's testimony [at trial] only related to the fact that he ran the Defendant's name to determine the Defendant's address and checked out the Defendant's and his wife's Facebook account. His

---

[10] (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531.)

11

testimony in the Court's view was a minor administerial part of the investigation.  It was not even contested by the Defense."

### 5.    Circumstances in Aggravation and Sentencing

Following the denial of Torrez's supplemental motion for discovery, the court held a trial on the circumstances in aggravation.[11]  No new evidence was adduced, and counsel presented arguments.  The court found true the sentencing factors noted at California Rules of Court, rule 4.421(a)(1), (a)(3), (a)(8), (b)(1), and (c).

Sentencing occurred in April 2023.  In discussing the charges, the prosecutor argued that section 654 applied for some of the counts in that "count 6 and count 7 essentially is the alternative charge [*sic*] for counts 4 and 5."[12]

The court sentenced Torrez to 22 years, consisting of: (1) 16 years for count 1 (the high term of six years plus ten years under section 12022.53, subdivision (b)[13]); (2) four years and eight months for count 2 (one-third of the mid-term of four years (or sixteen months) plus one-third of ten years (or forty months)

---

[11] Torrez had waived his right to a jury trial on the circumstances in aggravation.

[12] (§ 654, subd. (a) ["An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision"].)

[13] (§ 12022.53, subd. (b) ["Notwithstanding any other law, a person who, in the commission of a felony specified in subdivision (a), personally uses a firearm, shall be punished by an additional and consecutive term of imprisonment in the state prison for 10 years"].)

under section 12022.53, subdivision (b)), to run consecutively; (3) seven years and four months for count 3 (the mid-term of four years plus one-third of ten years (or forty months) under section 12022.53, subdivision (b)), stayed under section 654, to run concurrently;[14] (4) eight months for count 4 (one-third of the mid-term of two years) to run consecutively; (5) eight months for count 5 (one-third of the mid-term of two years) to run consecutively; (6) two years for counts 6 and 7 (one-third of the mid-term of six years), both stayed under section 654 but otherwise to run concurrently; and (7) two years for count 8 (the mid-term), to run concurrently.  Torrez timely appealed.

## DISCUSSION

### A.    *The Court Did Not Err in Its Review of the Requested Information*

Torrez filed two motions for discovery after the trial.  One was granted as to Alejandro Valencia only, and the second was denied.  The court's in-camera review of complaints filed against Valencia was transcribed, but the transcript was sealed.

On appeal, Torrez asks us to "conduct an independent review of the *Pitchess* hearings and records produced, if any, to determine whether error occurred."  "A motion for discovery of peace officer personnel records is 'addressed solely to the sound discretion of the trial court.'  [Citation.]  A review of the lower court's ruling is subject to an abuse of discretion standard."

---

[14] The court also stated that if it were found that the sentence for count 3 should not be stayed, then its intention was to impose the sentence for count 3 to run concurrently, and to strike the firearm enhancement in the interests of justice.

13

(*People v. Gill* (1997) 60 Cal.App.4th 743, 749.) We have reviewed the sealed transcript of the in-camera hearing and conclude the court did not abuse its discretion in its decisions on what was and was not responsive.[15]

We also agree with the trial court's assessment that Valencia played a minor role in the investigation—he investigated Torrez's address and the social media accounts of him and his wife. Valencia's testimony was unchallenged by Torrez and there was no dispute that Torrez actually lived at the address that Valencia found. As such, any potential error was harmless.

**B.** *Torrez Fails to Demonstrate the Court Erred in Sealing the September and October 2022 Transcripts*

The court sealed the September 8, 2022 transcript in which it informed Torrez's counsel about a disclosure made to the court by the People, and then later sealed the October 6, 2022 transcript in which it denied the motion brought by Torrez's

---

[15] To the extent Torrez requests that we conduct an independent review of the hearings themselves—the December 2022 hearing in which the court granted Torrez's discovery motion as to Valencia only, and the February 2023 hearing in which the court denied Torrez's supplemental motion for discovery—we decline. The transcripts for these hearings were not sealed and it is not our job to make arguments on Torrez's behalf. An appellate brief " 'should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' " (*People v. Stanley* (1995) 10 Cal.4th 764, 793.)

counsel to unseal the September 8, 2022 transcript. Torrez contends the court erred in sealing these transcripts.

First, Torrez argues that he had the right to the disclosure of exculpatory evidence, of information listed in section 1054.1, and of evidence relevant to the credibility of witnesses. But he does not explain how the evidence disclosed to his counsel at the September 2022 in-camera hearing, or the discussions held in the October 2022 hearing denying his motion to unseal, constitutes any of those things. He has therefore forfeited this argument. (*People v. Clayburg* (2012) 211 Cal.App.4th 86, 93 [issue forfeited for failure to present "reasoned argument and analysis"]; *People v. Sorden* (2021) 65 Cal.App.5th 582, 603 [issue forfeited for "failure to present reasoned argument and legal authorities in support"].)[16]

Next, Torrez asks that we review the sealed transcripts "similar to the procedures followed for review of *Pitchess*

_____

[16] We reject the claim that Torrez's "[c]ounsel cannot discuss in this brief the contents of the September 8, 2022, reporter's transcript, or the contents of the motion to unseal that hearing, because of the trial court's sealing orders." Torrez's counsel requested permission to view the sealed transcripts and we granted that request. If he needed to reference the contents of those transcripts to support his argument that the court erred in sealing them, then the California Rules of Court provide procedures for filing briefs referencing sealed records. (See Cal. Rules of Court, rule 8.46(g)(2) ["If it is necessary to disclose material contained in a sealed record in a filing in the reviewing court, two versions must be filed: [¶] (A) A public redacted version. . . [and] [¶] (B) An unredacted version"].) Nothing prevented Torrez's counsel from explaining why the sealed transcripts contained exculpatory or otherwise relevant information.

hearings." He has cited no authority permitting us to do this but because the People have voiced no objection, and because the transcripts were part of the record we reviewed in any case, we state that, after reviewing the contents of the transcripts, we discern no abuse of discretion in the trial court's conclusion that the information disclosed and discussed in the September 8, and October 6, 2022 hearings was not pertinent to Torrez's defense. (See *People v. Samuels* (2005) 36 Cal.4th 96, 110 [court may independently review evidence to determine whether trial court abused its discretion in refusing to disclose evidence].)

Finally, Torrez also asks that we "apply California Rule of Court 2.550, subdivision (d), to determine whether the trial court properly sealed the transcript of the September 8, 2022, hearing and the October 6, 2022, motion," arguing that the "prosecution failed to show an overriding interest in sealing this hearing or motion" and "[a]ny potential harm or threat from disclosure was speculation." Again, we find this argument forfeited for lack of reasoned argument or citation to relevant authority. (*People v. Clayburg*, *supra*, 211 Cal.App.4th at p. 93; *People v. Sorden*, *supra*, 65 Cal.App.5th at p. 603.)

C. ***The Court Was Not Required to Strike the Firearm Enhancement for Count 2***

The court sentenced Torrez to 22 years in prison, including four years and eight months for count 2 (one-third of the mid-term of four years (or sixteen months) plus one-third of ten years (or forty months) under section 12022.53, subdivision (b)). Torrez argues this firearm enhancement must be vacated under section 1385, subdivisions (c)(2)(B) and (C), as these two subdivisions stated that enhancements "shall" be dismissed if there are multiple enhancements alleged in a single case or if the

16

application of an enhancement would result in a sentence of over 20 years.[17]

As Torrez acknowledges, several appellate courts have rejected this argument. In *People v. Anderson* (2023) 88 Cal.App.5th 233, review granted April 19, 2023, S278786 (*Anderson*), our colleagues in Division Seven stated:

"If we were to read section 1385, subdivision (c)(2)(B) and (C), in isolation, then [appellant]'s argument would appear correct—use of the term 'shall' in a statute is generally mandatory, not permissive. However, 'we are not permitted to pluck this phrase out of its placement in the statute and consider it in isolation; instead, we are required to consider where it fits into the " 'context of the statute as a whole.' " ' " (*Anderson, supra*, 88 Cal.App.5th at p. 239, rev.gr.)

*Anderson* continued: "[T]he statement that a court 'shall' dismiss certain enhancements appears as a subpart to the general provision that a 'court shall dismiss an enhancement *if* it

_____

[17] (§ 1385, subd. (c)(2) ["In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others. [¶] . . . [¶] (B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed. [¶] (C) The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed"].)

is in the furtherance of justice to do so.' (§ 1385, subd. (c)(1), italics added.) In other words, the dismissal of the enhancement is conditioned on a court's finding dismissal is in the interest of justice. The nature of this condition is further explained by the Legislature's directive that the court, while 'exercising its discretion under this subdivision, . . . shall consider and afford great weight' to evidence of certain factors, and proof of one of the factors 'weighs greatly' in favor of dismissal 'unless' the court finds dismissal would endanger public safety. (*Id.*, subd. (c)(2).)" (*Anderson*, *supra*, 88 Cal.App.5th at p. 239, rev.gr.)

Thus, the appellate court concluded that "[t]his language, taken together, explicitly and unambiguously establishes: the trial court has discretion to dismiss sentencing enhancements; certain circumstances weigh greatly in favor of dismissal; and a finding of danger to public safety can overcome the circumstances in favor of dismissal. [¶] It is within these boundaries that section 1385 states the court 'shall' dismiss all but one enhancement and/or enhancements resulting in a sentence of more than 20 years. The dismissal *shall* occur but only *if*, in exercising its discretion and giving great weight to certain factors, the court finds dismissal is in the interests of justice or would not endanger public safety." (*Anderson*, *supra*, 88 Cal.App.5th at pp. 239–240, rev.gr.)

Our colleagues in Division Two arrived at the same conclusion in *People v. Walker* (2022) 86 Cal.App.5th 386, review granted March 22, 2023, S278309, noting "[i]f we were to read the phrase appended to the multiple enhancements mitigating factor as *automatically* mandating dismissal of all but one enhancement whenever multiple enhancements exist, then the existence of

multiple enhancements would not 'weigh greatly' in favor of dismissal—it would weigh *dispositively*." (*Id.* at p. 397.)

We agree with our colleagues and conclude the trial court had discretion—but was not required—to dismiss the firearm enhancement for count 2. As Torrez argues only that the court lacked discretion to not dismiss the enhancement—but not that the court abused its discretion in not doing so—he has failed to demonstrate the court erred in not dismissing the enhancement.

### D. *Substantial Evidence Does Not Support the Convictions for Counts 4 Through 7*

To prove the crime of unlawfully possessing an assault weapon, the prosecution must prove (among other elements) that the defendant possessed an assault weapon and that "[t]he defendant knew he possessed it." (CALCRIM 2560.) Similarly, to prove the crime of being a felon in possession of a firearm, the prosecution must prove (among other elements) that the defendant possessed a firearm, and that "[t]he defendant knew that he possessed the firearm." (CALCRIM 2510.) Therefore, in convicting Torrez of counts 4 through 7, the jury necessarily and specifically found not only that Torrez was in possession of "a brown Norinco AK rifle" and "a black model GPWSARAK [*sic*] rifle," but that he knew he possessed those weapons.

Torrez contends insufficient evidence supports these convictions. When a conviction is challenged as lacking evidentiary support, "the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)

19

We conclude that when viewed in the light most favorable to the judgment, a reasonable trier of fact could not have found beyond a reasonable doubt that Torrez knew he possessed those two weapons.

Two assault rifles were seized from what appeared to be Torrez's garage. Five DNA profiles were found on one of the rifles, and three DNA profiles were found on the other. As for the rifle with five DNA profiles, Yumori—the LAPD criminalist who analyzed the DNA—could not identify any of the DNA profiles; he could conclude only that at least two of those profiles were of men. As for the rifle with three DNA profiles, Yumori testified there was "limited support" to *exclude* Torrez as one of the three DNA profiles.

The People contend that the jury was entitled to infer that Torrez had "constructive possession of the guns" because he had participated in the robbery and burglary the previous day, had coordinated the crime with Quintero via text message, and the weapons were found in his home the day after the robbery and burglary. They cite to numerous cases standing for the proposition that "possession may be imputed when the contraband is found in a place which is immediately and exclusively accessible to the accused and subject to his dominion and control, or to the joint dominion and control of the accused and another." (*People v. Williams* (1971) 5 Cal.3d 211, 215.)[18]

---

[18] (But see *People v. Redrick* (1961) 55 Cal.2d 282, 285 ["proof of opportunity of access to a place where narcotics are found, without more, will not support a finding of unlawful possession" of narcotics]; *People v. Zyduck* (1969) 270 Cal.App.2d 334, 336 ["Opportunity of access to a place where contraband is stored is not enough, by itself, to establish possession [citation]. *(Fn. is continued on the next page.)*

But they cite to no authority that an accused's *knowledge* of possession may be imputed in such circumstances.

The People do not explain, and we do not see, why Torrez's participation in the robbery and burglary the previous day—in which he used a handgun and not an assault rifle—would logically permit an inference that he knowingly had possession of the assault rifles found in what appeared to be his garage. Similarly, there is no evidence showing that those who coordinate crimes via text messages are more likely to knowingly own assault rifles. Thus, the only link between Torrez and these weapons was that they were stored in a garage to which he—and at least five other occupants—had access. Regardless of whether such evidence is sufficient to support a finding of constructive possession of those weapons, it is insufficient to support a finding that he knew he possessed those weapons. Therefore, substantial evidence does not support his conviction on these four counts.

---

Dominion and control are essentials of possession, and they cannot be inferred from mere presence or access. Something more must be shown to support inferring of these elements"].)

## DISPOSITION

The convictions on counts 4, 5, 6, and 7 are reversed.  In all other respects, the judgment is affirmed.  On remand, the trial court shall resentence the defendant.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.